JAMA SMITH ,

        Petitioner,

        v.

STEVEN JOHNSON, et al.,

        Respondents.

Civil Action No. 16-3701 (MCA)

OPINION

## I.    **INTRODUCTION**

This matter has been opened to the Court by Petitioner's filing of a habeas petition pursuant to 28 U.S.C. § 2254, raising nine separate grounds for relief. As explained in this Opinion, the Court deems Ground Six withdrawn and will deny the petition as to Grounds One, Two, Three, Four, Five, and Eight. The Court will direct the parties to submit supplemental briefing on Grounds Seven and Nine, which assert a claim pursuant to *Lafler v. Cooper*, 566 U.S. 156 (2012) ("the *Lafler* Claim"), and will reserve judgment on the *Lafler* Claim and the issuance of a certificate of appealability until the briefing is complete.

## II.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

### a.   **Factual Background**[1]

On October 6, 2002, at approximately 1:00 a.m., Sergeant Stanley Rodriguez and Officer Felix Arroyo of the Paterson Police Department were on routine patrol on River Street driving in an unmarked police vehicle. A red bubble light on the dashboard was the only feature that could possibly identify it as a police vehicle. While driving, Rodriguez observed what he believed to

---

[1] The Factual Background is taken from the state court decision denying Petitioner's direct appeal, *State v. Smith*, 2007 WL 3005342, at *1 (N.J. Super. App. Div. Oct. 17, 2007).

be a narcotics transaction. He observed an unidentified male hand paper that Rodriguez believed was paper currency to another man, whom Rodriguez identified at trial as defendant. Rodriguez then saw defendant hand the man a small object.

After observing that exchange, Rodriguez and Arroyo stopped their vehicle and exited. Rodriguez, dressed in plain clothes but wearing a police badge around his neck, ordered both men to stop. Neither obeyed. Defendant dropped a small plastic bag on the ground, and began walking down River Street toward Fifth Avenue; the other man began walking up Sixth Avenue. Rodriguez retrieved the plastic bag and found inside it what he believed was crack cocaine. After Rodriguez advised Arroyo that he had recovered drugs, Arroyo immediately ordered defendant to stop. Defendant fled.

During the ensuing foot chase, Rodriguez saw defendant reach into his waistband and pull out a handgun. Rodriguez drew his service revolver, and while pointing it at defendant, he repeatedly told defendant to drop his weapon. Rodriguez was able to apprehend defendant and tackle him to the ground. Rodriguez testified that defendant struggled to avoid arrest by flailing his arms and legs.

During that struggle, defendant's gun slid under a white van parked near by. Arroyo located and retrieved the gun, which was a .380 caliber semi-automatic weapon with one round in the chamber. The serial number had been scratched off the weapon. The State produced evidence demonstrating that at the time of arrest, defendant was within 1000 feet of a school.

Defendant testified on his own behalf and denied all of the allegations against him, including having a gun or narcotics in his possession, threatening police officers with a gun, engaging in a hand-to-hand drug sale, and struggling with Rodriguez at the time of arrest. Defendant admitted that he fled upon seeing the police vehicle, but explained he did so only

2

because he feared he would be arrested for warrants for unpaid parking tickets. Defendant testified that he was not tackled by police, but instead tripped onto the ground.

During his testimony, defendant acknowledged that he had been convicted of a first-degree crime in 1995, for which he was sentenced to a fifteen-year term of imprisonment, with five years before parole eligibility. He also acknowledged that in 1995, he was also convicted of a third-degree crime for which he received a five-year sentence, with eighteen months of parole ineligibility.

Defendant's cousin, Michael Brown, testified that he and defendant were walking on River Street when they saw a police car rapidly approach them and park. After one officer jumped out of the unmarked car, Brown saw his cousin run up the street. Brown testified he did not know why defendant ran, but believed it was because he was on parole. Brown watched as the officer chased defendant across the street, and he saw defendant turn around and run back toward Brown and Miguel Chappell. Brown did not see anything in defendant's hand and testified that defendant was not carrying a gun while running. According to Brown, the officer did not tackle defendant. Instead, defendant tripped and fell to the ground about seven feet from where Brown was standing. Before he hit the ground, defendant did not have a gun or any silver object in his hand.

Brown also testified that at no time while he was with defendant in the two hours before the police vehicle approached, did defendant sell drugs. Brown stated that he, defendant and Chappell were merely standing in the general area of River Street near Sixth Avenue in the minutes before police approached. Brown testified that defendant did not drop a bag of cocaine. Chappell's testimony corroborated that of Brown.

Petitioner was convicted of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of CDS with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3) (count two); third-degree possession of CDS with the intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-7 (count three); third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count seven); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eight); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count nine); second-degree possession of a weapon while committing a narcotics offense, N.J.S.A. 2C:39-4.1 (count ten); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count eleven); and second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7 (count twelve). The jury acquitted defendant on counts four, five and six, which charged fourth-degree aggravated assault by pointing a firearm, and two counts of third-degree assault on a police officer.

At sentencing, the judge granted the State's motion to sentence defendant to a mandatory extended term as a prior Graves Act offender pursuant to N.J.S.A. 2C:43-6(c), and as a prior drug distribution offender pursuant to N.J.S.A. 2C:43-6(f), and the trial court orally imposed an aggregate sentence of 40 years with a 20-year parole disqualifier.[2]

---

[2] As explained below, Petitioner was orally sentenced to an aggregate term of 40 years with a 20-year parole disqualifier, but the Judgment of Conviction ("JOC") contained clerical errors. The Appellate Division decision denying his direct appeal states that "[t]he aggregate sentence imposed totaled forty years imprisonment, with a fifteen-year parole ineligibility term." *Smith*, 2007 WL 3005342, at *1. The Appellate Division's decision affirming denial of PCR incorrectly states that its direct appeal decision "noted the court imposed an aggregate sentence of forty years, with a twenty-year period of parole ineligibility. *Smith I*, supra, slip op. at 3.) *See State v. Smith*, 2016 WL 698565, at *3 n.2 (N.J. Super. App. Div. Feb. 23, 2016).

4

### b. Procedural History

Petitioner appealed his convictions and sentence, and the Appellate Division affirmed the convictions and mandatory consecutive term imposed on Count ten, but remanded for resentencing in light of *State v. Natale* (II), 878 A.2d 724 (N.J. 2005), and for the trial judge to explain his reasons for imposing a consecutive sentence on Count twelve. *State v. Smith*, 2007 WL 3005342, at *10 (N.J. Super. App. Div. Oct. 17, 2007).

Petitioner filed a petition for certification, and the New Jersey Supreme Court granted defendant's petition for certification in part, "limited solely to reviewing defendant's claim that, to convict under N.J.S.A. 2C:39–3(d), the State must prove a defendant's knowledge of possession of the weapon and knowledge of the weapon's defacement." *State v. Smith*, 197 N.J. 325, 330 (2009) (citing *State v. Smith*, 193 N.J. 584 (2008)). On January 27, 2009, the Supreme Court affirmed defendant's conviction. *Id.* at 339.

In the meantime, pursuant to the Appellate Division's remand, Petitioner was resentenced on October 3, 2008, and the judge re-imposed the sentence from the previous judgment of conviction. (ECF No. 10-37, Exhibit 37) Petitioner appealed the October 3, 2008 resentencing, and while the appeal was pending, on April 2, 2009, the New Jersey State Parole Board sent a letter to the presiding judge of Passaic County requesting clarification of Petitioner's sentence, noting that it appeared that the sentence imposed was thirty years with a 10-year parole ineligibility term. (*See* ECF No. 17, at 141 (PA 41-42).) On May 14, 2010, the trial judge conducted a hearing and determined that the original judgment of conviction contained clerical errors, and that he had imposed a total aggregate sentence of 40 years with a 20-year parole ineligibility term. (ECF No. 10-38, Exhibit 38.) The trial judge amended the

JOC to reflect the sentence he actually imposed. (ECF No. 17, PA 53-55, Amended JOC dated May 14, 2010).

An amended notice of appeal was filed, and the Appellate Division affirmed the sentence in a per curiam opinion on July 28, 2011. (ECF No. 17 at PA56-69). The New Jersey Supreme Court denied certification on January 19, 2012. (ECF No. 17, PA 70.)

Defendant filed a pro se PCR petition on or about March 17, 2010. (ECF No. 17, PA 120-125.) The PCR court denied the petition without a hearing as procedurally barred and without merit on July 24, 2014. (ECF No. 17, PA 79-98.) On February 23, 2016, the Appellate Division affirmed, *State v. Smith*, 2016 WL 698565, at *1 (N.J. Super. App. Div. Feb. 23, 2016), and the Supreme Court denied certification on May 6, 2016. *State v. Smith*, 225 N.J. 340 (2016).

The instant Petition was docketed on June 22, 2016, and is dated June 14, 2016. The Petition raises nine grounds for relief. (*See* ECF No. 1.) Respondents' answer was filed on September 28, 2018 (See ECF No. 8; see also ECF No. 10), and Petitioner, proceeding pro se, sought several extensions of time within which to file a traverse, which were granted by the Court. (ECF Nos. 9, 11-13.) On April 9, 2019, John Vincent Saykanic, Esquire, entered a notice of appearance on behalf of Petitioner, and, on May 29, 2019, he filed a traverse on Petitioner's behalf.

## III. <u>STANDARD OF REVIEW</u>

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by AEDPA

(28 U.S.C. § 2244), federal courts in habeas corpus cases must give considerable deference to

determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim-
>
>> (1) resulted in a decision that was contrary to, or involved
>> an unreasonable application of, clearly established Federal
>> law, as determined by the Supreme Court of the United
>> States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented
>> in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[3] a federal court

"has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was

contrary to, or involved an unreasonable application of, clearly established Federal Law, as

determined by the Supreme Court of the United States,' or 'was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"

*Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-

court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court
proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2)
resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."
*Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks
omitted).

U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. §
2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's]
cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of
th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-
06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may
grant the writ if the state court identifies the correct governing legal principle from th[e]
[Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's
case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its
examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an
erroneous factual determination of the state court, two provisions of the AEDPA necessarily
apply. First, the AEDPA provides that "a determination of a factual issue made by a State court
shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see
Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief
unless the adjudication of the claim "resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding." 28
U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas
corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of
the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal
claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504
F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir.

2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them as meritless under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV.   ANALYSIS

The instant Petition raises nine grounds for relief. In his traverse, Petitioner's counsel acknowledges that Ground Six of the Petition (lack of fingerprint testing on the gun) is unexhausted (*See* ECF No. 17, Traverse at 88), and elects to withdraw Ground Six in order to

prevent the dismissal of the entire Petition as a mixed petition. (*See id.*) As such, the Court deems Ground Six withdrawn, and the Court addresses the remaining claims for relief below.

### a. Prosecutor's Use of Post-Arrest Silence on Cross Examination (Ground One)

In Ground One, Petitioner asserts that the prosecutor structured his cross-examination of defendant to tell the jury that defendant did not make a statement to police at the time of his arrest, and that this line of questioning violated his due process rights to a fair trial. The following exchange took place at trial during the State's cross-examination of Petitioner:

> Q: What were you being charged with? You're being charged with drugs, possessing them with the intent to sell them and possession of a handgun?
>
> A: Yes.
>
> Q: Did you at any time say to them, hey, man, what are you talking about-
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: I'll sustain the objection. Ladies and gentlemen, you'll disregard that question. Please step into the jury room....

After the jury stepped into the jury room, there was a discussion on the matter. (ECF No. 10-32, 4T194-25 to 200-22). The prosecutor explained that he had only intended to ask defendant why he ran, since he had not done anything, and if he knew what he would be charged with. (*Id.* at 4T197-20 to 198-12). The judge then noted that nothing in the case indicated that defendant had been questioned or Mirandized, and that no questioning in the area of defendant's pre-arrest silence would be permitted. (*Id.* at 4T198-13 to 25). Defense counsel asked, "What about some type of limited instruction to the jury to try to ameliorate the damage that I think the question's already done?" (*Id.* at 4T199-1 to 3). The judge pointed out that he had given an immediate instruction to disregard the question, and that the answer to the question had not been actually elicited. (*Id.* at 4T199-4 to 7). The judge also ordered that the audiotape of the pertinent part of

10

the proceedings be played back. (*Id.* at 4T199-4 to 23). After hearing the tape, the judge

determined that there was no need for further instruction. (*Id.* at 4T199-24 to 200-22).

Petitioner raised Ground One on direct appeal, and the Appellate Division rejected the

claim as follows:

> We need not decide whether the prosecutor's cross-examination
> ran afoul of *State v. Muhammad*, 182 N.J. 551, 567 (2005), in
> which the Court held that the State may not cross-examine a
> defendant about his failure to have made an exculpatory statement
> to police. Here, we are satisfied that the Court promptly instructed
> the jury to disregard the question. If a trial judge orders the jury to
> disregard a question, we assume that the jury followed the judge's
> instruction and that any prejudice that may have been caused by
> the comment has been eliminated. *State v. Farrell*, 61 N.J. 99, 107
> (1972).
>
> In addition to instructing the jury to disregard the question, the
> judge also explained in his jury charge that "[a]ny testimony that I
> may have had the occasion to strike is not evidence and should not
> enter into your deliberations. It must be disregarded by you."
> Under these circumstances, we are confident that the judge's
> immediate and forceful response negated any prejudice that might
> otherwise have arisen. For these reasons, we reject defendant's
> contentions in Point I.

*State v. Smith*, 2007 WL 3005342, at *3–4 (N.J. Super. App. Div. 2007).

It is well-established that a state prosecutor may not seek to impeach a defendant's

exculpatory story, told for the first time at trial, by cross-examining the defendant about his

failure to have told the story after receiving *Miranda* warnings at the time of his arrest. The

Supreme Court has held that "the use for impeachment purposes of petitioners' silence, at the

time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the

Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). In *Brecht v. Abrahamson*,

507 U.S. 619, 638 (1993), the Supreme Court specifically addressed a *Doyle* error and held that

the *Kotteakos*[4] harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type.

Furthermore, as relevant here, the Supreme Court has held that there can be no *Doyle* violation where the reference to post-arrest silence occurs in a single question and the trial court sustains an objection to the improper question and provides a curative instruction to the jury, thereby barring the prosecutor from using the silence for impeachment. *See Greer v. Miller*, 483 U.S. 756, 764–66 (1987) (finding that "[t]he sequence of events in this case—a single question, an immediate objection, and two curative instructions—clearly indicates that the prosecutor's improper question did not violate [petitioner's] due process rights").

In *Greer v. Miller*, Respondent Miller took the stand on direct examination he testified that he had taken no part in the crime, but that the other two alleged participants, Armstrong and Williams, had come to the trailer home after the murder was committed seeking Miller's advice. Miller testified that Armstrong confessed that he and Williams had beaten and robbed Gorsuch, and that they had killed him to avoid being identified as the perpetrators.

The prosecutor began his cross-examination of Miller as follows

> "Q: Mr. Miller, how old are you?
> "A: 23.
> "Q: Why didn't you tell this story to anybody when you got arrested?"

Defense counsel immediately objected. Out of the hearing of the jury, Miller's lawyer requested a mistrial on the ground that the prosecutor's question violated Miller's right to remain silent after arrest. The trial judge denied the motion, but immediately sustained the objection and

---

[4] *Kotteakos v. United States*, 328 U.S. 750 (1946).

12

instructed the jury to "ignore [the] question, for the time being." The prosecutor did not pursue the issue further, nor did he mention it during his closing argument. At the conclusion of the presentation of evidence, defense counsel did not renew his objection or request an instruction concerning the prosecutor's question. Moreover, the judge specifically instructed the jury to "disregard questions ... to which objections were sustained." Miller was convicted of murder, aggravated kidnapping, and robbery, and sentenced to 80 years in prison. *See Greer*, 483 U.S. at 758–59.

In finding no *Doyle* violation under these facts, the Supreme Court stated as follows:

> ...the trial court in this case did not permit the inquiry that *Doyle* forbids. Instead, the court explicitly sustained an objection to the only question that touched upon Miller's postarrest silence. No further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained. Unlike the prosecutor in *Doyle*, the prosecutor in this case was not "allowed to undertake impeachment on," or "permit[ted] ... to call attention to," Miller's silence. 426 U.S., at 619, and n. 10, 96 S.Ct., at 2245, and n. 10. The fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case.

*Greer*, 483 U.S. at 764–65.

The facts of this case are similar to what occurred in *Greer*. Petitioner's counsel objected to the prosecutor's single question regarding his post-arrest silence, the objection was sustained, and the judge later instructed the jury to disregard any evidence where he had sustained an objection. Although Petitioner's counsel sought a more detailed limiting instruction at the time the objection was sustained and the trial court declined to give it, this fact alone does not warrant departure from the Supreme Court's analysis in *Greer*. As noted by the Appellate Division, the judge gave a general instruction that the jury should disregard evidence if the judge had sustained an objection. For these reasons, the Appellate Division did not unreasonably apply

clearly established federal law when it denied Petitioner's claim regarding cross-examination

about his post-arrest silence, and habeas relief is not warranted on Ground One.[5]

### b. Failure to Grant Mistrial after Other Crimes Evidence Heard by Jury

In Ground Two, Petitioner argues that the trial court erred when it denied his motion for a

mistrial after a defense witness commented during cross-examination that defendant was on

parole at the time of the instant offense. The following testimony was elicited during cross-

examination of defense witness Michael Brown:

> Q: But either way when the police officers came up on the
> scene your first cousin took off running; correct, that's what you
> told us?
>
> A: Yes, sir, that's what I told you.
>
> Q: Yes, okay. And you told us that you don't know why.
>
> A: Yeah.
>
> Q: Correct? Sir, to this day you don't know why your first
> cousin took off running when the-
>
> [DEFENSE COUNSEL]: Objection-
>
> Q: -police came up to the scene?
>
> [DEFENSE COUNSEL]:-relevance.
>
> THE COURT: No, I'll permit it.
>
> A: Nope.

---

[5] The Court notes that Petitioner's counsel appears to have reframed Ground One as prosecutorial misconduct. It does not appear that Grounds One was fairly raised as prosecutorial misconduct to the state courts and Petitioner may not or raised raise unexhausted claims for the first time in federal court or amend his Petition though his Traverse. A court may also deny an unexhausted claim on the merits. The Supreme Court has recognized that prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)). Even if the Court were to analyze Grounds One as prosecutorial misconduct, the prosecutor's single question regarding Petitioner's post-arrest silence did not violate due process where the objection was sustained, and the trial court instructed the jury to disregard the question.

BY THE STATE:

Q: To this day you still don't know why your first cousin took off running?

A: Well, I don't know-I believe because he was on parole-

[DEFENSE COUNSEL]: Objection, speculation.

THE COURT: Strike the answer. It's nonresponsive to the question.

[PROSECUTOR]: I'll move on, Judge.

BY THE STATE:

Q: He goes off-

THE COURT: The jury will disregard the last answer.

(ECF No. 10-32, 4T105-14 to 106-10.) The trial judge later denied Petitioner's motion for a

mistrial. (*Id.* at 4T106-14 to 15; 4T134-7 to 139-18; 4T172-23 to 174-11.)

On direct appeal, Petitioner argued that the prosecutor's question constituted the

introduction of other crimes evidence that did not satisfy the four-part test established in *State v.*

*Cofield*, 127 N.J. 328 (1992), and had not been the subject of a N.J.R.E. 104(a) hearing outside

the presence of the jury. The Appellate Division rejected his claim as follows:

> For several reasons, we disagree that such a hearing was required.
>
> First, as the judge properly concluded, Brown's remark "wasn't occasioned by any conduct by the prosecutor ... wasn't responsive to the question[,][a]nd it was purely volunteered by the witness." Stated differently, the prosecutor could not have anticipated that Brown would have given that answer when the prosecutor asked why defendant was running. Accordingly, we reject defendant's argument that the question represented a conscious effort by the State to elicit information of defendant's prior conviction.
>
> Second, the judge promptly instructed the jury to disregard Brown's remark about defendant being on parole. The jury is presumed to have followed that instruction. *State v. Muhammad*, 145 N.J. 23, 52 (1996).
>
> Third, we defer to the judge's conclusion that Brown was mumbling and speaking so softly at the time he made the remark that it was unlikely the jury heard it in any event. Fourth, during his direct testimony, defendant acknowledged, as we have already

explained, that he was sentenced in 1995 to a fifteen-year term of imprisonment, with five years to be served without eligibility for parole. The judge later explained to the jury that the evidence of defendant's prior conviction could only be used to assist the jury in evaluating defendant's credibility. In light of the lengthy sentence defendant received in 1995, it does not strike us as unreasonable that the jury would have concluded that defendant might still have been on parole on October 6, 2002, which was only seven years later. Because the jury might well have assumed that defendant would be on parole in 2002, we conclude that little, if any, prejudice resulted from Brown's off-hand remark.

Even though the judge directed the jury to disregard Brown's comment that defendant might have been on parole at the time he ran from police, defense counsel moved for a mistrial, which the court denied. In situations such as this, where a witness blurts out inadmissible evidence, the trial judge must determine whether the "inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial." *State v. Winter*, 96 N.J. 640, 647 (1984). The trial court's decision to grant or deny a motion for a mistrial is a discretionary determination, warranting great deference. *Ibid.*

Here, the following factors lead us to conclude that the judge acted well within his discretion when he denied the motion for a mistrial: the judge's instruction to the jury that the comment should be disregarded; the judge's later instruction that defendant's convictions were admissible only to assist the jury in evaluating credibility; the prosecutor's inability to predict that Brown would have given such an answer; and the testimony that defendant was sentenced in 1995 to a fifteen-year term of imprisonment. If there was any prejudice to defendant from Brown's remark, it was clearly capable of being cured by the judge's instruction to disregard the remark. The denial of defendant's motion for a mistrial did not constitute a misapplication of the judge's discretion.

*Smith*, 2007 WL 3005342, at *3-5.

Ground Two does not warrant habeas relief. As an initial matter, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). The admissibility of evidence is generally a question of state law which is not cognizable under

habeas review. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Velez v. Lagana*, No. 12-0430, 2015 WL 2344674, at *6 (D.N.J. May 14, 2015).

The parties have not provided the Court with Petitioner's direct appeal brief. As such, the Court is unable to determine whether Petitioner raised this claim as a violation of his federal due process rights or merely argued that the Court's rulings violated state law. The admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.' " *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989) ); *Alford v. Warden New Jersey State Prison*, 2019 WL 1418121, at *4 (D.N.J. Mar. 29, 2019) (same). Here, Petitioner is unable to meet that standard because the objection to the evidence was sustained, and the trial judge instructed the jury to disregard it, and there is nothing in the record to suggest that the jury did not follow the trial court's instruction. As such, even if Petitioner did raise the claim as a violation of his due process rights, he would not be entitled to habeas relief.[6]

Petitioner also argues that habeas relief is warranted because the trial court misapplied state law in denying his motion for a mistrial. Even if the trial court erred in applying state law, such error would not warrant federal habeas relief. The Third Circuit dealt with a very similar

---

[6] Nor does Ground Two warrant relief as an instance of prosecutorial misconduct that denied Petitioner a fair trial where the objection to the evidence was sustained, and the trial judge instructed the jury to disregard it, and there is nothing in the record to suggest that the jury did not follow the trial court's instruction. Furthermore, the state courts rejected Petitioner's assertion that the prosecutor attempted to elicit the remark from Brown and found that Brown blurted it out.

claim in *Minett v. Hendricks*, 135 F. App'x. 547, 552-54 (3d Cir. 2005). In denying that petitioner's claim, the Third Circuit noted that the Supreme Court has held that courts should "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant.'" *Id.* at 553 (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). The Third Circuit also noted that the Supreme Court has on several occasions refused to find that improperly admitted other crimes evidence fails to constitute a denial of due process where a limiting instruction has been provided, even where that limiting instruction is itself deficient. *Id.*; *see also Estelle v. McGuire*, 502 U.S. 62 (1991); *Spencer v. Texas*, 385 U.S. 554 (1967). The Third Circuit in *Minett* therefore rejected that petitioner's claim that the inadvertent admission of his other crimes evidence warranted habeas relief because he could not show that the state court's refusal to grant a mistrial amounted to a denial of due process. *Minett* 135 F. App'x. at 553-54. Here, Petitioner has not shown that his due process rights were violated by the failure to grant a mistrial, and the Court will deny relief on Ground Two.

### c. Errors in Jury Instructions

In Ground Three, Petitioner argues that the jury charge was deficient in a number of respects, and therefore denied him the right to a fair trial.

The Supreme Court has held that an error in a jury instruction is a "trial error," not a "structural error," meaning that it is subject to a harmless error analysis. *California v. Roy*, 519 U.S. 2, 5 (1996). There, the Court specifically held that an "omission" on a jury charge was to be analyzed under the harmless error standard announced in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). An error is harmless unless it "had substantial and injurious effect or influence

18

in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In

determining whether there is harmless error, we examine the impact of the error on the trial as a

whole. *Yohn*, 76 F.3d at 523. Thus, we ask whether the error had a substantial influence on the

verdict despite sufficient evidence to support the result apart from the error. *Id.*

When evaluating a jury instruction, the instruction "must be considered in the context of the

instructions as a whole and the trial record." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

Additionally, federal habeas precedent places an especially heavy burden on a defendant who

seeks to show "error from a jury instruction that quotes a state statute." *Id.* at 190. Further, an

omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the

law. *See Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977). Finally, the determination of

whether a jury would have reached a different verdict but-for the omitted instruction cannot be

based purely on speculation. *See id.* at 157.

     The Appellate Division summarized the jury instruction claims as follows:

> III. THE JURY INSTRUCTIONS, WHICH FAILED TO
> DEFINE AN ELEMENT OF RESISTING ARREST AND
> POSSESSION OF A DEFACED FIREARM AND EXPLAINED
> A DEFENSE NOT RAISED BY DEFENDANT, DENIED
> DEFENDANT A FAIR TRIAL. (Not Raised Below)
>
> A. The Trial Court Failed to Define the Element of
> Physical Force or Violence in its Instruction on Resisting Arrest.
>
> B. The Trial Court Omitted the Element of Knowledge of
> Defacement in its Instruction on Possession of a Defaced Firearm.
>
> C. The Court Erred in Giving the Jury a Charge on
> Identification Where Identity Was Not An Issue.

*Smith*, 2007 WL 3005342, at *2.

Regarding the trial court's failure to define physical force or violence, the Appellate Division rejected this argument, finding that "'[t]he terms 'physical force or violence' are given their ordinary meaning. *State v. Brannon*, 178 N.J. 500, 510-11 (2004). Accordingly, it was not necessary for the judge to give the jury a special definition. *Smith*, 2007 WL 3005342 at *6 (citing *id.*). The state court did not unreasonably apply clearly established federal law in finding that physical force or violence did not require a special definition and any failure provide such a definition would be harmless in light of the ordinary meaning of the terms.

The Appellate Division also rejected Petitioner's argument that the identification charge prejudiced him because such charge would lead the jury to expect defendant to present evidence that someone else had possessed the drugs and gun, finding that the contention lacked merit because

> [t]he judge's instruction plainly told the jury otherwise. In the identification charge, the judge instructed the jury that "[t]he defendant has neither the burden nor the duty to show that the crime, if it was committed at all, was committed by someone else or to prove the identity of that person." Under these circumstances, the identification charge was not error.

*Smith*, 2007 WL 3005342, at *6. Because the instruction informed the jury that defendant did not have the burden of showing that the crime was committed by someone else or to prove the identity of that person, the Appellate Division did not violate any clearly established federal law in rejecting Petitioner's claim regarding the identification charge.

After extensive discussion, the Appellate Division also rejected Petitioner's argument that the trial court erred in omitting the element of knowledge of defacement in its instruction on possession of a defaced firearm. *See Smith*, 2007 WL 3005342, at *6–10. The New Jersey Supreme Court granted certification on this issue, *State v. Smith*, 193 N.J. 584 (2008), limited to

reviewing a claim regarding the proof required for a conviction for possession of a defaced

firearm. *See State v. Smith*, 197 N.J. 325 (2009).

The Supreme Court, in the last reasoned decision on this issue, set forth the following

relevant facts in considering this claim:

> At trial, Detective Antonio Urena testified about the weapon's defacement. When asked if he was able to discern the weapon's serial number, Urena answered in the negative because the serial number had been "scratched out." Pointing to a specific area of the gun's frame, the detective testified that "[there were] serial numbers right here on the frame right below the slide. But [they are now] indiscernible." Based on his experience, Urena labeled the weapon a "defaced" firearm.[7]
>
> At the conclusion of the trial testimony, the court instructed the jury as follows on the defaced weapon offense:
>
> In Count 11 the defendant is charged with possession of a defaced firearm contrary to the provisions of New Jersey law on October 6th, 2002[,] in the City of Paterson.
>
> The statute upon which this charge is based reads as follows[:]
>
> Any person who knowingly has in his possession any firearm which has been defaced is guilt[y] of a crime.
>
> In order to convict the defendant of this charge the State has the burden of proof beyond a reasonable doubt of each of the following elements;
>
> First, that there is an item in evidence which is, in fact, a firearm.
>
> Second, that the firearm was defaced.
>
> Third, that the defendant possessed the same knowingly at the time of the event on October 6th, 2002.
>
> The same definition that I previously gave you with regard to a firearm applies and that includes any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectile ball, slug, pellet, missile, or bullet or

---

[7] "A defaced firearm includes one whose serial number or other identifying mark has been removed or altered. N.J.S.A. 2C:39–1(b) defines 'deface' as 'to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.'" *Id.* at 328.

any case vapor or other noxious thing by means of a cartridge of [sic] shell or by the action of an explosive or the igniting of flammable or explosive substances.

The word deface means to remove, cover, alter, or destroy the name of the maker, model, manufacture, serial number or other distinguishing identification mark or number on any firearm.

So the State must prove, first of all, that there was a firearm.

Second that the firearm was defaced. And—

Third, that the defendant knowingly possessed that firearm.

Again, knowingly means a person acts with—knowingly with respect to his conduct if he's aware that his conduct is of that—is of that nature

The State must prove that the defendant was aware that he possessed the firearm. Since knowingly is a state of mind that cannot be seen and can only be determined by inference from conduct, words or acts it is rarely susceptible of direct proof. And, therefore, it's not necessary that witnesses be produced by the State to testify that an accused said that he knowingly possessed a firearm. His knowledge may be gathered from his acts and his conduct and from all that he said and did at a particular time and place and from all the surrounding circumstances reflecting the— reflected in the testimony.

Thus, after careful consideration of all the evidence in this case you find that the State has failed to prove beyond a reasonable doubt any of the elements charged than [sic] you must find the defendant not guilty.

If, on the other hand, you're satisfied that the State has proven beyond a reasonable doubt that there is a firearm, that the firearm was defaced and that the defendant knowingly possessed the same at the time of this event on October 6th, 2002[,] in the City of Paterson than [sic] you must find the defendant guilty.

*State v. Smith*, 197 N.J. at 327–29.

The New Jersey Supreme Court next summarized Petitioner's argument on appeal and

the Appellate Division's decision as follows:

Defendant appealed and asserted, among other things, that the trial court erred by omitting the element of knowledge of defacement in its instruction on possession of a defaced firearm. In support of his claim of instructional error, defendant relied on a January 9, 2006, revision to the Model Jury Charge on possession of a defaced

weapon, a revision that had not occurred until a year and a half after his conviction. The changed instruction requires the State to prove that the defendant possessed the weapon knowing that it was defaced.

In an unpublished opinion, the Appellate Division rejected defendant's argument that knowledge of the weapon's defacement is an element of the offense, and held that knowingly possessing a weapon that happens to be defaced is sufficient for conviction under N.J.S.A. 2C:39-3(d). In construing subsection (d), the panel noted the parallel language and proximity of N.J.S.A. 2C:39-3's subsections (a), (b) and (c), which respectively prohibit the possession of destructive devices, sawed-off shotguns, and firearm silencers. To convict under those offenses, the State must prove only that the defendant knew that he possessed the prohibited item. The Appellate Division reasoned that the Legislature intended, in the case of the similarly worded subsection (d) offense, that the State must prove only the fact of possession of the defaced firearm. As for the defendant's reliance on the changed language of the Model Jury Charge, the panel noted that there had not been any legislative changes to N.J.S.A. 2C:39-3(d) or to case law interpreting and applying the statute, which could have supported a revised view of the proofs necessary to convict under the offense. The panel concluded, therefore, that the change to the Model Jury Charge, which incorporated a knowledge-of-defacement element, had been made in error.

*Id.* at 329–30.

The New Jersey Supreme Court next set out the relevant statutory provision and the

parties' arguments:

In this matter we must interpret what the term "knowingly" modifies in N.J.S.A. 2C:39-3(d). That provision, proscribing the possession of a defaced firearm, states that

[a]ny person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

Defendant argues that the term "knowingly" in that provision could be read sensibly in two ways. Under one interpretation, "knowingly" could be read to modify "possession," requiring only that the State prove defendant's knowledge of the fact of possession in order to convict for possession of the prohibited item (the defaced firearm). Under the other, "knowingly" could be read to modify the entire phrase, "possession of any firearm which has been defaced." Under the second interpretation, the State would be

required to prove defendant's knowledge of a firearm's defacement in order to convict. Defendant asserts that the Legislature did not plainly establish that the offense would be a per se offense and that, therefore, a "knowing" level of culpability should be held to apply to the fact of the firearm's defacement.

In light of the two plausible interpretations, defendant further argues that the language is ambiguous. Thus, he claims that examination of the statute's legislative history and the recent interpretation given to the statute by the Supreme Court Model Criminal Jury Charge Committee, provide further support for the proposition that the State must prove his knowledge of the gun's defacement. Last, defendant seeks application of the rule of lenity in his case because of the statute's ambiguity.

The State argues that the plain language and syntax of the provision support a single reasonable interpretation, that "knowingly" modifies "possession" and that, therefore, proving possession of the prohibited item suffices for a conviction. The State emphasizes that the same interpretation has been long ascribed to related, and similarly worded subsections of the statute and that the Legislature has acquiesced to the courts' interpretation of those provisions of N.J.S.A. 2C:39–3 as per se offenses. Further, the State disputes that legislative history provides any support for defendant's interpretation of the statute.

*Id.* at 331.

Applying well-established principles of statutory construction, the New Jersey Supreme

Court reasoned as follows:

In the provision in question, the Legislature placed the term "knowingly" immediately before the phrase, "has in his possession a firearm." There then follows another, subordinate phrase, "which has been defaced," that describes further the nature of the proscribed item. Were we to accept defendant's interpretation, we would, in effect, be required to read the provision to proscribe knowing "possession of any firearm which [he knows] has been defaced." Plainly, courts are not to read into a statute words that were not placed there by the Legislature. As we have noted before, "[i]t is not the function of this Court to rewrite a plainly-written enactment of the Legislature or [ ] presume that the Legislature intended something other than that expressed by way of the plain language." *Ibid.* (internal citations and quotations omitted).

Moreover, in this instance it is notable that the Legislature placed the modifying phrase, "which has been defaced," in an attenuated position from the word "knowingly." The Legislature could have

chosen to express itself differently in respect of a firearm's defacement. It could have chosen to use an adjective ("knowingly has in his possession a [defaced] firearm") to modify the term "firearm," instead of using a passive phrase that further attenuates the fact of defacement from the term, "knowingly." Although that alternative phraseology would not have compelled a different conclusion, particularly in light of the similar phrasing of other subsections of N.J.S.A. 2C:39-3, the suggested alternate language would have provided stronger support for defendant's preferred interpretation. As the statute actually reads, the legislative choice of phraseology better supports the interpretation urged by the State in that it suggests that the Legislature meant for "knowingly" to focus on the possession of the prohibited item, and not the illicit nature of the object.

....

Judging from the wording that the Legislature used to express itself in N.J.S.A. 2C:39-3(d), it appears that the State has the better argument as to the likely legislative intent, namely that "knowingly" modifies only "possession" of the proscribed item.

*Id.* at 333.

The court further determined that even if the statutory language were deemed ambiguous, the court's prior decision in *State v. Lee*, 96 N.J. 156 (1984) provided further support for the conclusion that N.J.S.A. 2C:39-3(d) applied as a per se statutory offense. *See id.* at 335 ("We presume that the Legislature, for nearly twenty-five years now, as agreed with the view, expressed in *Lee*, that N.J.S.A. 2C:39-3(b) intended to make the possession of certain illicit weapons, such as a sawed-off shotgun, a per se offense," and finding that this reasoning applied to subsection (d)). Finally, nothing in the legislative history of N.J.S.A. 2C:39-3(d) weighed against the court's finding that the Legislature meant for subsection (d) to be a per se possessory offense. (*Id.* at 338.)

In sum, after analyzing the text, related provisions, and legislative history of N.J.S.A. 2C:39-3(d), the New Jersey Supreme Court held "that the term "knowingly" in N.J.S.A. 2C:39-3(d) modifies 'possession' of a firearm which has been defaced" and that "[t]he State was not

required to prove that, at the time that he knowingly possessed the firearm, defendant also knew that it was defaced." *State v. Smith*, 197 N.J. at 338–39. The New Jersey Supreme Court therefore rejected Petitioner assertion that the trial court's charge was in error, and affirmed his conviction for possession of a firearm that had been defaced.[8] *Id.*

In his Petition for habeas relief, Petitioner argues that the trial court failed to instruct the jury on each element of the offense of possession of a firearm which had been defaced; however, the Supreme Court of New Jersey, after extensive analysis of the criminal statute, held otherwise, and Petitioner has not shown that the New Jersey Supreme Court's interpretation of N.J.S.A. 2C:39-3, which is state criminal statute, violated any clearly established federal right as established by the Supreme Court of the United States. "Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law." *Gillespie v. Ryan*, 837 F.2d 628, 632 (3d Cir. 1988); *see Knight v. Beyer*, No. 88–3180, 1989 WL 68618, at *4 (D.N.J. June 22, 1989) ("[A] state court's interpretation of a state criminal statute is binding on a federal court reviewing the merits of a habeas corpus petition."); *see also Buehl v. Vaughn*, 166 F.3d 163, 175–76 (3d Cir. 1999) (holding that state court's interpretation of its own statute is only unconstitutional if it is an "obvious subterfuge to evade consideration of a federal issue" or "plainly untenable") (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) & *Ward v. Love Cty.*, 253 U.S. 17, 22 (1920)). Here, Petitioner has not shown that the state's interpretation is a subterfuge designed to evade a federal issue or that its interpretation of N.J.S.A. 2C:39-3(d) is plainly untenable.

---

[8] The court further directed that the Model Jury Charge Committee correct its instruction for the offense of possession of a defaced firearm and reexamine the model charges for offenses under N.J.S.A. 2C:39–3's other subsections to ensure that the model charges are consistent with the court's opinion.

Because the Appellate Division did not violate any clearly established federal law in rejecting his jury instruction claims, the Court will deny habeas relief on Ground Three.

### d. **Prosecutorial Misconduct**

In Ground Four of the Petition, Petitioner alleges that he is entitled to habeas relief based on several instances of alleged prosecutorial misconduct in the state's summation. In Petitioner's direct appeal, the Appellate Division summarized these claims as follows:

> IV. WHEN THE PROSECUTOR VOUCHED FOR HIS WITNESSES, EXPRESSED HIS PERSONAL BELIEF IN DEFENDANT'S GUILT, MISSTATED THE FACTS AND LAW, AND MOCKED DEFENSE COUNSEL, HE DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Raised in Part Below)
>
> A. The Prosecutor Vouched for the Credibility of His Witnesses and Misstated the Law.
>
> B. The Prosecutor Shifted the Burden of Proof.
>
> C. The Prosecutor Misquoted the Facts.
>
> D. The Prosecutor Disparaged Defense Counsel.

*Smith*, 2007 WL 3005342, at *2. The Appellate Division rejected these arguments, finding that they "lack[ed] sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2)." *Id.* at *10.

Petitioner first highlights several passages of the prosecutor's summation where the prosecutor improperly expressed his personal belief in the credibility of the state's witnesses and also misstated the law:

> . . . [Officer] Rodriguez approached this unknown make. Do you recall his testimony? When they both walked up on these two guys, do you remember what he said. He startled them. They had no idea a cop was going to roll up on them. They turn around boom, two cops. What's he do? He does the dropsy. He drops the bag containing 50 baggies of crack cocaine, drops it to the ground.

27

Now [Officer] Rodriguez and [Detective] Arroyo told us that they saw him drop something and begin to walk northbound on River Street. Well, I submit to you that I find that credible.

....

What is the glaring difference? Never had the drugs, never had the gun. Interesting. I submit to you that someone is lying. Clearly.

You have to decide whether it's two police officers; both on the force for 10 years, engaged in a conspiracy against the defendant Jama Smith, this conspiracy beginning on October 6, 2002. This conspiracy continuing with Sergeant Rodriguez when he went before the Passaic County Grant Jury and his conspiracy continued till last week when both Sergeant Rodriguez and Detective Arroyo took the witness stand in this courtroom and, again, lied to you under oath. This conspiracy to plant this 380 semi automatic handgun on this defendant, and it is not complete, because you heard their testimony. This conspiracy that lasted almost two years.

I don't know, ladies and gentlemen. Based upon your common sense, your understanding of how people operate in life does that seem reasonable? I submit to you[,] you heard no testimony that these officers even knew the defendant. . . . Well, I guess if you believe this conspiracy theory they just happened to pick out the defendant, they happened to pick out Jama Smith on October 6, 2002 at about 1:10 in the morning who just happened to be standing in front of 596 River Street to be a focus of this great conspiracy to convict this defendant of these rather serious charges. They never, I submit to you, knew him prior to that. And I submit to you, they probably don't know him even to this day. But he just happened to be at the wrong place at the wrong time for these evil police officers to frame him.

Are you prepared to accept that theory in this case? That's what you have to decide. Because if you believe these witnesses everything happened basically the way the cops said it happened, but for the gun and but for the drugs. Well where did they come from? Where did the objects come from? Clearly, defendant said he didn't have them. His witnesses said they didn't have them or stay that he didn't have them. Well, only one of them really said that, and I'll get to that in a minute. So it had to be from the cops.

(ECF No. 10-34, 6T37-6 to 17;6T45-12 to 47-10.)

Petitioner also argues that the Prosecutor shifted the burden of proof by stating the following: "According to the defendant, which again, I submit to you has never been proven, never been indicated, the defendant ran because he had motor vehicle warrants." (*Id.* at 6T46-10 to 13.) Defense counsel's objection was overruled. (*Id.* at 6T94-4 to 95-11; 6T95-16 to 96-16.)

Petitioner also argues that the prosecutor misquoted the facts by stating that Petitioner's witness Chappell simply didn't recall whether Petitioner had drugs or a gun on him (*Id.* at 6T48-4 to 11), when the testimony reflects that it was the prosecutor who asked Chappell if he "recalled" whether Petitioner had drugs or a gun and Chappell unequivocally stated that he did not see Petitioner with a gun on October 6, 2002. (*See* ECF No. 10-32, 4T149-7 to 150-25; 4T163-11 to 165-5.)

Finally, Petitioner also argues that the prosecutor disparaged defense counsel. At trial, defense counsel adduced testimony that there had been no fingerprint testing done on the weapon. During summation, the prosecutor compared the need for fingerprinting testing in Petitioner's case to the need for DNA evidence where there is a videotape of the crime. (*See* ECF No. 10-34, 6T53-16 to 54-9.)

The Supreme Court has held that prosecutorial misconduct is insufficient to overturn a conviction unless it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that a prosecutor's remarks were inappropriate or even deserving of universal condemnation. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant" to determine if prosecutorial conduct rises to a level that infects the trial

with such unfairness as to make the resulting conviction a denial of due process. *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir.2001).

The Court has reviewed the prosecutor's summation in its entirety and in the context of the evidence presented at trial, and finds that these comments did not rise to the level that would deprive Petitioner of a fair trial. As such, the New Jersey courts did not unreasonably apply clearly established federal law in rejecting his claims of prosecutorial misconduct, and the Court will deny relief on Ground Four.

### e.  Excessive Sentence (Ground Five)

In Ground Five, Defendant contends that his sentences, all maximums, most with maximum parole ineligibility, are excessive and must be reduced. Petitioner alleges that the trial judge erred in running his most serious sentences consecutively and this error violated his due process rights under the Fourteenth Amendment. As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits. *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984). Matters of procedure and sentencing are generally matters of state law and cannot justify the federal intervention of habeas corpus relief. *Jones*, 725 F.2d at 43. Petitioner has not provided any reasons that the Court would depart from this general rule.

To the extent Petitioner challenges the trial court's correction of the clerical errors in his sentence, he does not have "a constitutionally protected liberty interest in a miscalculated release date." *Evans v. Sec'y Pa. Dep't of Corrs.*, 645 F.3d 650, 652 (3d Cir. 2011) (finding no violation of inmate's Fourteenth Amendment rights when Department of Corrections corrected an inmate's sentence status summary sheet almost eleven years after petitioner's conviction; inmate did not have a fundamental right to be released from prison on or about a certain date). Correcting a

mistake does not violate a petitioner's procedural or substantive due process. *Id.* at 659–667.
Here, the sentenced imposed was not changed, and Petitioner's liberty and due process rights
were not implicated when the clear clerical error was corrected to reflect the unambiguous
sentence the trial judge actually orally imposed. Therefore, the Court will therefore deny habeas
relief on Ground Five.

### f. Ineffective Assistance under *Lafler v. Cooper*, 566 U.S. 156 (2012) (Ground Seven & Nine)

In Grounds Seven and Nine, Petitioner asserts that he received ineffective assistance of
counsel during the plea-bargaining stages as counsel failed to advise Petitioner accurately
regarding the maximum parole disqualifier he faced as a result of rejecting the state's plea offer
and proceeding to trial where he ultimately received a significantly higher sentence. Petitioner
argues that the state courts unreasonably applied the constitutional standards for effective
assistance of counsel laid out in *Strickland v. Washington*, 466 U.S. 668 (1984) as articulated by
the United States Supreme Court in *Lafler v. Cooper*, 566 U.S. 156 (2012).

Petitioner exhausted this claim in his PCR, which was filed on or about March 12, 2010.
In a certification dated June 21, 2013, Petitioner asserted that he received ineffective assistance
of counsel because his trial attorney failed to accurately inform him of the maximum period of
parole ineligibility he faced if he proceeded to trial and was convicted of all of the charges.
Defendant certified that had he known he could receive twenty years of parole ineligibility,
rather than the thirteen years discussed during the Rule 3:9–1 proceeding and in paragraph
numbered five of the pretrial memorandum, he would have accepted the State's plea offer
instead of going to trial. (*See* ECF No. 17, PA 76-78.)

The PCR court rejected this claim as procedurally barred under Rule 3:22-12 because it
was filed approximately four months beyond the 5-year deadline for bringing a PCR petition.

The PCR court also addressed the merits and determined that Petitioner failed to meet the test under *Strickland*, finding that Petitioner was aware that he faced a "far greater sentence if convicted after trial" and because Petitioner maintained his innocence during trial and at sentencing and would not be able to provide a factual basis had he accepted the plea deal. (*See* ECF No. 10-39, PCR Hearing Tr. 34-5 to 34-21; 30-11 to 33-6.)

On appeal of denial of PCR, the Appellate Division addressed this claim as follows:

> We first address defendant's contention that the PCR court erred in rejecting the claim that his trial counsel was ineffective by failing to accurately inform him regarding the maximum period of parole ineligibility he faced if convicted of the charges after trial. Defendant asserted that if he had been accurately informed of the maximum period of parole ineligibility, he would have accepted the State's plea offer and not proceeded to trial.
>
> We are convinced the PCR court properly rejected defendant's argument and denied the petition. Where it is claimed that trial counsel's mistaken advice regarding potential sentencing exposure caused a defendant to reject a plea offer and proceed to trial, the defendant establishes prejudice under the second prong of the *Strickland* standard by demonstrating that he would have accepted the plea offer if he had been aware of his sentencing exposure, that his guilty plea would have been accepted by the court, and that the conviction and sentence he would have received under the plea offer would have been less severe than those resulting from the trial. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 1385, 182 L. Ed.2d 398, 407 (2012).
>
> As the PCR court correctly found here, even assuming trial counsel had accurately advised defendant he could receive a twenty-year period of parole ineligibility, the court could not have accepted the proposed plea agreement because defendant could not have provided a factual basis supporting convictions for the offenses to which he was required to plea under the agreement. Defendant maintained his innocence throughout the matter and testified under oath at trial that he did not possess CDS or the handgun, did not point a handgun at the officers, did not resist arrest, and did not engage in a hand-to-hand drug transaction.
>
> The [New Jersey] Supreme Court has stated:
>
> If a trial court cannot accept a guilty plea that is known to be false, then it would be strange indeed for a PCR court to vacate a jury verdict following a fair trial on the ground that defendant would

have taken an advantageous plea offer with a limited sentence exposure if only he had been given the opportunity to lie under oath. A court cannot give its imprimatur to perjury or in any way suggest that the requirement of a truthful factual basis at a plea colloquy is an empty formality.

[*Taccetta*, supra, 200 N.J. at 197.]

Our court rules require that there be a factual basis supporting a plea of guilty and that, to accept a guilty plea, "a judge must be 'satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" *Id.* at 196 (quoting *State v. Slater*, 198 N.J. 145, 155 (2009)).

"Even if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea." *Taccetta*, supra, 200 N.J. at 196 (quoting *State v. Smullen*, 118 N.J. 408, 415 (1990)). Defendant here could not have entered a plea of guilty to any of the charges pursuant to the State's plea offer, "for the simple reason that a defendant does not have the right to commit perjury in giving a factual basis for a crime he insists he did not commit." *Id.* at 194. He denied under oath at trial committing all of the offenses charged in the indictment. Even assuming defendant satisfied "the first prong of the *Strickland/Fritz* standard—that his counsel was constitutionally ineffective for giving him mistaken advice about the sentencing consequences of proceeding to trial—defendant [did not] satisfy the second prong of that standard, which require[ed] a showing of prejudice" because the court could not have accepted defendant's guilty plea. *Id.* at 194–95.

We are convinced the PCR court correctly found that defendant did not demonstrate prejudice under the second prong of the *Strickland* standard and, as a result, did not establish a prima facie case of ineffective assistance of counsel. Defendant was therefore not entitled to an evidentiary hearing. *Marshall*, supra, 148 N.J. at 158.

We also reject defendant's argument that the court erred in finding that the PCR petition was time barred under Rule 3:22–12. Rule 3:22–12(a) requires a defendant to file a petition for PCR within five years of the entry of the judgment or sentence unless the defendant shows that the delay "beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions [are] found to be true enforcement of the time bar would result in a fundamental injustice." "The [ ] time limitation[ ] shall not be relaxed, except as provided" in Rule 3:22–12. R. 3:22–12(c); see R. 1:3–4(c) ("Neither the parties nor the court may [ ] enlarge the time specified by ... R. 3:22–12.").

Defendant's judgment of conviction was entered on November 12, 2004, and his PCR petition was required to have been filed by November 12, 2009. Defendant filed his petition on March 17, 2010, four months beyond the deadline contained in Rule 3:22–12. Defendant acknowledges that the five-year time bar commenced upon the entry of his judgment of conviction and was neither tolled nor stayed by the prior appellate proceedings. *See, e.g., State v. Dugan*, 289 N.J. Super. 15, 19 (App .Div.), certif. denied, 145 N.J. 373 (1996). He contends, however, that his failure to timely file the petition should be excused under Rule 3:22–12(a)(1) because he appeared pro se and the attorneys who represented him on his various direct appeal proceedings did not advise him of the deadline for filing a PCR petition. We disagree.

Defendant's pro se status does not provide a basis to permit his late filing of his PCR petition. Any claimed "[i]gnorance of the law and rules of court does not qualify as excusable neglect." *State v. Merola*, 365 N.J. Super. 203, 218 (Law Div.2002) (citing *State v. Murray*, 162 N.J. 240, 246 (2000)), aff'd o.b., 365 N.J. Super. 82, 84 (App.Div.2003), certif. denied, 179 N.J. 312 (2004).

We do not consider defendant's contention that the purported failure of his direct appeal counsel to advise him of the filing deadline constitutes excusable neglect under Rule 3:22–12. We cannot consider defendant's argument because it is founded upon facts which are not supported by an affidavit or certification. *See State v. Jones*, 219 N.J. 298, 312 (2014) ("[T]he Court Rules [ ] require that factual assertions in a petition for post-conviction relief be made by affidavit or certification in order to secure an evidentiary hearing."); R. 3:22–10(c).

Moreover, we decline to consider the argument because it was not raised below and does not involve jurisdictional or public interest concerns. *Zaman v. Felton*, 219 N.J. 199, 226–27 (2014); *see also Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234 (1973) ("[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.' " (quoting *Reynolds Offset Co., Inc. v. Summer*, 58 N.J. Super. 542, 548 (App. Div.1959), *certif. denied*, 31 N.J. 554 (1960))).

Even assuming defendant made a showing of excusable neglect under Rule 3:22–12(a)(1), he failed to demonstrate that enforcement of the time bar would result in a fundamental injustice. Defendant could not demonstrate a fundamental injustice because, as noted, he failed to establish a prima facie case of ineffective assistance of counsel under the *Strickland* standard.

*State v. Smith*, 2016 WL 698565, at *5–7 (N.J. Super. App. Div. Feb. 23, 2016).[9] The Supreme Court of New Jersey denied the petition for certification. *State v. Smith*, 225 N.J. 340 (N.J. 2016).

The New Jersey's Appellate Division's resolution of Petitioner's PCR appeal implicates the doctrine of procedural default. Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223–24 (3d Cir. 2001); <u>or</u>, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). "Ordinarily, violation of firmly established and regularly followed state rules ... will be adequate to foreclose review of a federal claim. There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (internal quotation marks and citations omitted).

---

[9] Respondents argue that the Appellate Division also rejected Petitioner's claim that his attorney misinformed him about his maximum parole disqualifier. *See* ECF No. 8, Respondent's Answer at 45.) The Court disagrees, as the Appellate Division determined that the "PCR court correctly found that defendant did not demonstrate prejudice under the second prong of the *Strickland* standard" and did not address whether counsel was deficient. *See id.* at 6. Indeed, the Appellate Division further stated:

> Because defendant failed to establish prejudice under the second prong of the Strickland standard, it was unnecessary for the PCR court to resolve the issue of whether defendant's response in paragraph numbered six on the pretrial memorandum provided adequate notice that he faced a twenty-year period of parole eligibility if convicted of all of the charges at trial.

*Id.* at *5, n. 3.

In this case, the Appellate Division first addressed Petitioner's *Lafler* Claim on the merits, relying primarily on state law, and subsequently agreed with the PCR court that Petitioner's *Lafler* Claim was also barred by N.J. Ct. R. 3:22-12.

In *Harris v. Reed*, 489 U.S. 255 (1989), the Supreme Court considered the application of the adequate and independent state ground doctrine to claims on habeas review and held that a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case "'clearly and expressly'" states that its judgment rests on a state procedural bar." *Id.* at 263. In *Harris*, the Supreme Court established a "plain statement" rule that there would be no procedural default, for purposes of federal habeas review, unless "the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."[10] 489 U.S. at 263. The Court in *Harris* expressly noted, however, that state courts may both rely on state procedural bars and reach federal substantive questions in denying habeas relief:

> Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 [56 S.Ct. 183, 80 L.Ed. 158] (1935). Thus, by applying this doctrine to habeas cases, . . . reconsideration of the federal issue on federal habeas [is curtailed] as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

---

[10] *Harris'* plain statement rule was subsequently narrowed by *Coleman v. Thompson*, 501 U.S. 722, 735 (1991), which clarified that the first step is to determine whether the decision of the last state court to which the petitioner presented his federal claims "fairly appears to rest primarily on federal law, or to be interwoven with the federal law." Only then, if there is such a reliance on federal law, do we look at whether the state court clearly and expressly based its ruling on a state procedural ground.[10] *Id; see also Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004.)

*Harris*, 489 U.S. at 264 n. 10; *see also Cabrera v. Barbo*, 175 F.3d 307, 314 (3d Cir.1999) (holding that the fact that Appellate Division also addressed the lack of merit in the ineffective assistance of counsel claim "does not undermine our conclusion that the state courts rejected Cabrera's claim on an independent and adequate state basis, as the comment at most was an alternative holding"). In *Rolan v. Coleman*, 680 F.3d 311, 320 (3d Cir. 2012),[11] the Third Circuit explained that the *Harris* footnote "suggests that where a holding provides sufficient basis for the state court's judgment, it should be upheld by the federal court", and that "[t]he Supreme Court's language [in the *Harris* footnote] does not limit the federal court's consideration based upon whether such state court articulation form the primary basis for its decision, or an alternate and sufficient basis for the decision." *Id.*

Neither Respondent nor Petitioner has addressed whether Grounds Seven and Nine are procedurally defaulted or whether the New Jersey Appellate Division, which issued the last reasoned decision on this claim, otherwise relied on an adequate and independent state law ground in denying the Lafler Claim.[12] Indeed, "[t]his rule applies whether the state law ground is substantive or procedural." *See Coleman*, 501 U.S. at 729-730. A state procedural rule is "independent" if it is separate from the federal issue. *See Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir.1999) ("[T]he basis for the state court's rejection of the ineffective assistance of counsel claims was state court procedural default ... Clearly, this disposition was an independent state ground."). Moreover, a state procedural rule is adequate if it was "firmly established and

---

[11] The Third Circuit has also held that AEDPA deference, rather than de novo review, applies when a state court decides a claim on procedural grounds and, alternatively, on the merits. *See Rolan*, 680 F.3d at 319 (addressing claim using AEDPA deference after determining that procedural default did not apply).

[12] The Court notes that the state appellate court cites to *Lafler* but also appears to rely on New Jersey law to resolve the issue.

regularly followed" at the time of the alleged procedural default. *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

A procedural default generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice. *Wainwright v. Sykes*, supra, 433 U.S. 72; *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Cause, therefore, can be established by showing, for example, that the factual or legal basis for a claim was not reasonably available to counsel or that government interference made compliance with the procedural rule impracticable. *Id.*; *Hull v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993). Attorney error may constitute cause only where such error rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment. *Murray*, 477 U.S. at 488–89.

Because these issues have not been briefed by Respondents or Petitioner, the Court will reserve judgment on Grounds Seven and Nine, and set a briefing schedule for the parties to address the issue of procedural default. In addition to procedural default, the parties shall also address the merits of this claim, including whether the New Jersey Appellate Division unreasonably applied *Lafler* in finding that Petitioner failed to establish prejudice under *Strickland*.

## g. Denial of PCR of Procedural Grounds (Ground Eight)

Finally, in Ground Eight, Petitioner asserts that the state courts erred in denying Defendant's PCR petition, in part, on procedural grounds under N.J. Ct. R. 3:22-12. This claim is not cognizable under § 2254 as it pertains only to the application of state procedural rules.

*Estelle v. McGuire*, 502 U.S. 62, 66 (1991) (observing that "federal habeas corpus relief does not lie for errors of state law" (quoting Lewis v. Jeffers, 497 U.S. 764, 780(1990))); see also *Green v. D'Ilio*, 2019 WL 290550, at *2 (D.N.J. Jan. 23, 2019). As such, the Court denies relief on Ground Eight.

## V.    CONCLUSION

For the reasons explained in this Opinion, the Court deems Ground six withdrawn and will deny the petition as to Grounds One, Two, Three, Four, Five, and Eight. The Court will direct the parties to submit supplemental briefing on Grounds Seven and Nine (the *Lafler* Claim) and reserves judgment on the *Lafler* Claim. The Court will administratively terminate this matter pending the supplemental briefing and will separately issue a determination on the certificate of appealability when it issues its decision on Grounds Seven and Nine. An appropriate Order follows.

Madeline Cox Arleo, District Judge
United States District Court

DATED: